UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

ELAINE L. CHAO*,
      Secretary of Labor,

          Plaintiff,

  and                      Civil Action No. 99-01435 (JHG)

RICHARD STOMPER, *et al.,*

      Intervenors,

  v.

AMALGAMATED TRANSIT UNION,
    AFL-CIO, CLC

      Defendant.

FILED

MAR 2 8 2001

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

## MEMORANDUM OPINION AND ORDER

      Contending that the defendant violated Title IV of Labor-Management Reporting and Disclosure Act of 1959, as amended, 29 U.S.C. § 401 *et seq.* (hereinafter the "LMRDA" or the "Act"), the Secretary of Labor filed a complaint to void the 1998 election of the defendant's International officers. She asks for a new election to be conducted under her supervision. Pending before the Court are the Secretary's and the intervenors' motions for summary judgment. For the reasons set forth below, the motions are granted.

_____

* Secretary Chao has been substituted for former-Secretary Herman pursuant to Rule 25(d) of the Federal Rules of Civil Procedure.

33/34

Much of the factual background of this case is undisputed.  The Amalgamated
Transit Union ("ATU" or the "International Union") is an international labor
organization, within the meaning of 29 U.S.C. §§ 402(i)-(j) and 481(a), that represents
public and private sector transit workers in the United States and Canada.  The ATU is
comprised of approximately 269 local unions in North America, with approximately
103,894 members in the United States alone, and an overall membership of approximately
126,240 throughout the United States and Canada.  Some of the local unions represent
exclusively employees of States and political subdivisions of States; others represent
exclusively workers employed in Canada; and a third set of locals each represent at least
some workers employed in the United States by private sector employers.  The ATU
elects its International officers by means of a triennial International convention, at which
delegates elected by ATU local unions convene at a particular location to nominate and
cast ballots for International Union officers.  Under the ATU Constitution, each local
union is required, in the absence of exigent circumstances, to send at least one delegate to
the International convention; and each local having more than 300 members is permitted
(but not required) to send an additional number of delegates, with the precise number of
additional delegates determined according to a formula that assigns delegates to locals in
close proportion to their membership strength.

The LMRDA regulates certain union officer elections.  The parties have stipulated
that, as a general matter, the Act does not regulate officer elections conducted by labor

2

organizations, whether local, intermediate, or international, whose members consist exclusively of employees of public sector employers; nor does the Act regulate elections conducted by labor organizations whose members consist exclusively of employees who work outside of the United States and its territories. *See* 29 U.S.C. §§ 402(e), (f), and (i). As indicated above, the ATU has local unions that meet these exemptions. These local unions will be referred to as "non-LMRDA local unions." Local unions which are not exempt, viz., local unions whose members include private sector employees working in the United States, will be referred to as "LMRDA-covered local unions." If, however, a non-LMRDA local union elects delegates to attend a convention held by an international parent labor organization that consists of at least one LMRDA-covered local union, and such delegates have the power to nominate and vote for officers of that international organization, then the process by which the non-LMRDA local unions elect delegates is regulated by the Act.

The ATU's 52nd triennial International convention took place in Chicago, Illinois between September 29 and October 3, 1998. Pursuant to the ATU Constitution, each local was entitled to send one or more voting delegates to the convention to represent the larger body of the local membership. Only delegates with full voting privileges were permitted to participate in nominating and electing international officers at the convention. At the 1998 convention, twenty-one officer positions were up for election: International President, International Executive Vice President, International

Secretary/Treasurer, and eighteen International Vice-President (IVP) positions. Nominations for each of these positions were taken from the floor. As to three of the positions (the Fourth, Tenth, and Eighteenth IVP positions), there were two nominees per position. As to each of the eighteen other positions, there was only one nominee who accepted his or her nomination, and thus the elections for these positions were uncontested. The results of the contested elections were as follows: Fourth IVP, incumbent Jackie Breckenridge defeated challenger Marcellus Barnes 413 to 120; Tenth IVP, incumbent Don Hansen defeated challenger Richard Stomper 464 to 19; Eighteenth IVP (an open seat with no incumbent running) Charles Pettus defeated Brenda Rayford by a tally of 408 to 101.

The bylaws of every ATU local provide that the President and Financial Secretary of the local are entitled to serve as *ex officio* delegates to the international convention. If the local union is entitled to more than two delegates, other local union officers serve as *ex officio* delegates. According to the stipulation of the parties, as a result of the use of local union officers as *ex officio* delegates, the qualifications necessary to become a local union officer are also qualifications necessary to become a convention delegate.

Section 14 of the ATU Constitution governs the election of local union officers. Members of non-LMRDA local unions are required to satisfy two qualifications to be eligible for local union office: a two-year "good standing" requirement and a "meeting-attendance" requirement. The meeting-attendance requirement is that the member must

4

have attended six local meetings in each of the two years preceding and including the nomination meeting. Local union meetings are required to be held at least once every month. Members of LMRDA-covered local unions are also required to satisfy a two-year "good standing requirement." In addition, the ATU Constitution permits LMRDA-covered local unions to either (a) adopt a more lenient meeting-attendance requirement, requiring attendance at six local union meetings during the one-year period preceding the convention; or (b) adopt no meeting-attendance requirement at all. Some LMRDA-covered local unions have adopted the six-meetings/one-year rule, and others have not.

Although many candidates for delegate are subject to meeting-attendance requirements, an ATU member seeking to run for International office need not satisfy any meeting-attendance requirement in order to be eligible. The only candidacy qualification for International Union office is that the would-be candidate be a member in two years' continuous good standing and obtain the nomination of a delegate.

Both before and after the 1998 International Union convention, ATU Local 241 member Richard Stomper filed a written complaint with the Secretary of Labor, which satisfied the enforcement requirements of LMRDA § 402(a), 29 U.S.C. § 482(a), and which concerned, *inter alia*, the validity of the above-described meeting-attendance requirements as applied to the election of local officer/delegates. After conducting an investigation, the Secretary filed the instant complaint. The complaint alleges that: (1) Section 401(e) of the LMRDA, 29 U.S.C. § 481(e), was violated when the defendant and

5

local unions affiliated with the ATU imposed unreasonable candidacy qualifications which rendered a significant portion of their memberships ineligible to be nominated and elected as delegates to the International convention;[1] (2) Section 401(e) of the LMRDA, 29 U.S.C. § 481(e), was violated when the candidacy qualification requirements for becoming a delegate to the International convention were not applied in a uniform manner; and (3) Section 401(a) of the LMRDA, 29 U.S.C. § 481(a), was violated when delegates to the International convention who were not elected by secret ballot were allowed to participate in the nomination and election of the International Union's officers.[2]  The Secretary asks for the elections of all International officers to be declared null and void, and for the Court to order the ATU to conduct new elections under the supervision of the Secretary.

_____

[1]Section 401(e) provides, in pertinent part:

> In any election required by this section which is to be held by secret ballot a reasonable opportunity shall be given for the nomination of candidates and every member in good standing shall be eligible to be a candidate and to hold office (subject to section 504 of this title and to reasonable qualifications uniformly imposed) and shall have the right to vote for or otherwise support the candidate or candidates of his choice, without being subject to penalty, discipline, or improper interference or reprisal of any kind by such organization or any member thereof.  29 U.S.C. § 481(e).

[2]Section 401(a) provides:

> Every national or international labor organization, except a federation of national or international labor organizations, shall elect its officers not less often than once every five years either by secret ballot among the members in good standing or at a convention of delegates chosen by secret ballot. 29 U.S.C. § 481(a).

6

ATU Local 241 member Richard Stomper, and four other ATU members, have

intervened in this action.  The intervenors' complaint contains the same allegations.  Both

the Secretary and the intervenors have now moved for summary judgment.

## I.   STANDARD OF REVIEW

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the moving party

has the burden to establish that the "pleadings, depositions, answers to interrogatories,

and admissions on file, together with the affidavits, if any, show that there is no genuine

issue as to any material fact," and that they are entitled to judgment as a matter of law.  A

moving party will be entitled to summary judgment only "if the record, viewed in the light

most favorable to the nonmoving party, reveals that there is no genuine issue as to any

material fact."  *Aka v. Washington Hospital Center*, 156 F.3d 1284, 1288 (D.C. Cir.

1998).  If the evidence is such that a reasonable fact-finder could find in favor of the non-

moving party, summary judgment will not lie.  *See Anderson v. Liberty Lobby*, 477 U.S.

242, 248 (1986).  In order to succeed on a motion for summary judgment, the Secretary

and the intervenors have to show that a reasonable fact-finder could only conclude that

the defendant violated the provisions of Title IV, and could only conclude that the

violations "may have affected the outcome" of the ATU's election for International Union

officers within the meaning of section 402(c).[3]

---

[3]Section 402(c) provides in pertinent part:

If, upon a preponderance of the evidence after trial upon the merits, the

The Secretary's motion parallels the allegations in her complaint.  The Secretary argues that ATU's meeting-attendance requirements for members seeking election as delegates are not "reasonable qualifications," nor were they "uniformly imposed" within the meaning of the provision of section 401(e) of the LMRDA, 29 U.S.C. § 481(e).  She also argues that section 401(a) of the LMRDA, 29 U.S.C. § 481(a), was violated when delegates to the International convention who were not elected by secret ballot were allowed to participate in the nomination and election of the International Union's officers. She asks for the statutory remedy of voiding of the election and the conduct of new elections under her supervision.  *Id.*

The intervenors' motion for summary judgment only argues that the meeting-attendance requirements were unreasonable, in violation of section 401(e).  They ask for the statutory remedy.  They also ask that the ATU be ordered to strike its provision regarding meeting-attendance from its constitution.

---

court finds-- . . .

> (2) that the violation of section 481 of this title may have affected the outcome of an election,

the court shall declare the election, if any, to be void and direct the conduct of a new election under supervision of the Secretary and, so far as lawful and practicable, in conformity with the constitution and bylaws of the labor organization. . . . 29 U.S.C. § 482(c).

8

II.   THE UNION'S MEETING-ATTENDANCE REQUIREMENTS ARE NOT
      "REASONABLE QUALIFICATIONS."

Title IV of the LMRDA regulates the election of union officers.  One of its

provisions is section 401(e), which limits candidacy qualifications to "reasonable

qualifications uniformly imposed . . . ."  29 U.S.C. § 481(e).  The Supreme Court has

identified the considerations relevant to the determination of whether meeting-attendance

rules violate the "reasonable qualifications" limitation of the LMRDA.  The Court has

stated that "[t]he basic objective of Title IV of the LMRDA is to guarantee 'free and

democratic' union elections modeled on 'political elections in this country' where 'the

assumption is that voters will exercise common sense and judgment in casting their

ballots.'" *Local 3489, United Steelworkers of America, AFL-CIO v. Usery,* 429 U.S. 305,

309 (1977) ("*Steelworkers*") (quoting *Wirtz v. Hotel, Motel and Club Employees*, 391

U.S. 492, 504 (1968) ("Hotel Employees")).  Given this background purpose, the

Supreme Court has repeatedly held that "the authorization in section 401(e) of

'reasonable qualifications uniformly imposed' should [not] be given a broad reach."

*Hotel Employees*, 391 U.S. at 499; *Steelworkers,* 429 U.S. at 309.  The question to be

answered in an individual case is whether "the antidemocratic effects of the meeting-

attendance rule outweigh the interests urged in its support." *Steelworkers*, 429 U.S. at

310.

The Secretary and the intervenors urge, and the defendant concedes, that the

9

meeting-attendance rules are unreasonable under *Doyle v. Brock*, 821 F.2d 778 (D.C. Cir. 1987). The defendant believes *Doyle* was wrongly decided (and desires to preserve that issue for appeal), but acknowledges that it is binding on this Court. The Court will therefore only briefly explain why this case is controlled by *Doyle*. The *Doyle* court found unlawful a meeting-attendance rule that required candidates for local union office to have attended at least one half of the union meetings in the preceding 12 months. 821 F.2d at 785-87.

In *Doyle*, the plaintiff had been rendered ineligible for candidacy for local union office by the meeting-attendance rule. *Id.* at 780. Along with the plaintiff, the rule had the effect of disqualifying 97% of the union membership from running for office. *Id.* at 781. After exhausting his internal remedies, the plaintiff filed a complaint with the Department of Labor seeking to have the Secretary sue to invalidate the election. *Id.* at 780. The Secretary declined to sue, however, stating his view that if the union's rule was reasonable, he would not initiate litigation solely because the rule's effect was to disqualify a vast percentage of the union's membership. *Id.* The plaintiff filed suit against the Secretary to compel him to sue the union. *Id.*; *see Dunlop v. Bachowski*, 421 U.S. 560 (1975) (permitting suits to review Secretary's decision not to bring civil action to set aside union election). The court found that the Secretary had committed an abuse of discretion. *Doyle*, 821 F.2d at 787.

Although *Doyle* did not adopt a per se rule of invalidity for meeting-attendance

10

rules such as the one at issue here, it did give controlling weight to the impact of the rule as measured by the percentage of the membership excluded from candidacy by its operation. According to the court, "the only way to justify a requirement that has a large antidemocratic effect is to show that the requirement serves valid union interests." *Doyle,* 821 F.2d at 785.

There is, of course, an obvious difference between this case and *Doyle.* The ATU's meeting-attendance requirement resulted in the disqualification of candidates for the position of delegate to the International convention; in *Doyle,* the rule disqualified candidates for local union office. However, the Court believes, and the defendant apparently concedes, that the limitation of "reasonable qualifications" is appropriately applied to elections of delegates. Section 401(e) applies "[i]n any election required by this section which is to be held by secret ballot . . . ." Section 401(a) states that "[e]very national or international labor organization . . . shall elect its officers . . . either by secret ballot among members in good standing or at a convention of delegates chosen by secret ballot." Since the ATU International has chosen to proceed by way of convention, the delegates must be elected by secret ballot. And because the delegates must be elected by secret ballot, section 401(e) applies, including the limitation of "reasonable qualifications". *See* 29 C.F.R. § 452.22. *Cf. Donovan v. District Council 35, Int'l Bhd. of Painters*, 702 F.2d 25, 27 (1st Cir. 1983) (applying section 401(e) to intermediate labor organization elections of officers pursuant to section 401(d)). *See also* Michael J.

11

Goldberg, Affirmative Action in Union Government: The Landrum-Griffin Act

Implications, 44 Ohio St. L. J. 649, 674 n. 193 (1983) (stating that section 401(e) should

apply to elections of delegates).   This statutory structure makes eminent sense.   In unions

using the convention system, members can only express their political will through their

delegates.   It is consequently just as important that the election of delegates be as open,

fair, and democratic as it is for the direct election of union officers.

    This case falls within the holding of *Doyle*.   The bylaw at issue in *Doyle* required

that candidates have attended one half of the union meetings in the preceding 12 months.

Here, under the ATU Constitution, LMRDA-covered locals are permitted to adopt a

requirement of six meetings in the preceding 12 months, or may adopt no meeting-

attendance requirement at all.   Potential candidates of non-LMRDA locals must meet a

more stringent requirement; they must have attended six meetings in each of the two

previous years.   Meetings must be held at least once a month.   In the Secretary's 1998

investigation, Labor Department officials visited 33 locals.   Ten of the 33 locals were

found to have imposed no meeting-attendance requirement at all.   Of the remaining 22,

six locals had employed the "six meetings in one year" requirement, and 16 had employed

the "six meetings in each of the prior two years" requirement.[4]   The following chart,

stipulated to by the parties, provides the percentage of the membership rendered ineligible

---

[4]One other local, Local 788 in St. Louis, employed a meeting-attendance
requirement but did not keep membership records during the period relevant to the claims
in this lawsuit.   The Labor Department did not consider this local in its analysis.

to run for delegate by the meeting-attendance requirements:

| Locals Applying the "Six Meetings in One Year" Requirement | |
| --- | --- |
| Local | Percent Ineligible |
| Local 1564, Detroit | 93.3% |
| Local 985, Pittsburgh | 96.9% |
| Local 757, Portland | 97.9% |
| Local 1181, Ozone Park | 98.2% |
| Local 1338, Dallas | 97.6% |
| Local 1342, Buffalo | 91.8% |

| Locals Applying the "Six Meetings in Each of the Two Prior Years" Requirement | |
| --- | --- |
| Local | Percent Ineligible |
| Local 926, Detroit | 93.9% |
| Local 589, Boston | 96.7% |
| Local 618, Providence | 89.9% |
| Local 819, Irvington | 96.9% |
| Local 1005, Minneapolis | 94.1% |
| Local 241, Chicago | 98.6% |
| Local 265, San Jose | 98.0% |
| Local 268, Cleveland | 98.3% |
| Local 308, Chicago | 97.9% |
| Local 689, Washington, DC | 94.7% |
| Local 880, Camden | 95.2% |
| Local 1001, Denver | 96.9% |

| Local 1056, Flushing | 94.3% |
|---|---|
| Local 1277, Los Angeles | 97.2% |
| Local 1300, Baltimore | 96.2% |
| Local 1560, New Orleans | 86.1% |

Compared to *Doyle*, this case therefore involves a similar requirement with a similar effect on the percentage of the membership eligible to run for delegate. Both of the ATU's meeting-attendance requirements have a highly antidemocratic effect on delegate elections. The lowest percentage of excluded members in any local that employed a meeting-attendance requirement was 86.1%. The Court finds, however, that the difference between 86.1% and 97% (as in *Doyle*) is of minimal significance. The significance is that in locals that had a meeting-attendance requirement, the vast majority of members were excluded from running for delegate. Given the "large antidemocratic effect" on delegate elections in locals that had a meeting-attendance requirement, the only way to justify the requirement is to show that it "serves valid union interests." *Doyle*, 821 F.2d at 785.

The defendant asserts that its meeting-attendance requirements serve three interests: (i) "inducing attendance at meetings from members who are considering challenging the incumbent local union officers, [which] serve[s] the substantial union interest in making the meetings themselves function more democratically"; (ii) "ensur[ing] that persons who hold positions of responsibility and trust in a local union

14

have a demonstrated interest in and commitment to the local union"; and (iii) "ensur[ing]

that local union officers are familiar with union affairs." Def. Br. at 13-14.

These interests were rejected by the Supreme Court in *Steelworkers:*

> [T]he rule has plainly not served these goals. It has obviously done little to
> encourage attendance at meetings, which continue to attract only a handful of
> members. Even as to the more limited goal of encouraging the attendance of
> potential dissident candidates, very few members, as we have said, are likely
> to see themselves as such sufficiently far in advance of the election to be
> spurred to attendance by the rule.
>      As for assuring the election of knowledgeable and dedicated leaders,
> the election provisions of the LMRDA express a congressional determination
> that the best means to this end is to leave the choice of leaders to the
> membership in open democratic elections, unfettered by arbitrary exclusions.
> Pursuing this goal by excluding the bulk of the membership from eligibility
> for office, and thus limiting the possibility of dissident candidacies, runs
> directly counter to the basic premise of the statute. We therefore conclude
> that Congress, in guaranteeing every union member the opportunity to hold
> office, subject only to "reasonable qualifications," disabled unions from
> establishing eligibility qualifications as sharply restrictive of the openness of
> the union political process as is [the Union's] attendance rule. 429 U.S. at
> 312-13; *Doyle,* 821 F.2d at 785-86 (quoting *Steelworkers*, 429 U.S. at 312-
> 13).

The foregoing discussion is dispositive. The antidemocratic effect of the meeting-

attendance requirements clearly outweigh the union's interest in imposing them.[5] *See*

---

[5]In addition to the reasons discussed above, the third interest asserted by the
defendant, that the requirements "ensur[e] that local union officers are familiar with union
affairs," makes no sense. The Secretary is challenging the Union's meeting-attendance
rules as applied to candidates for delegate, not candidates for local union officer. It is
true, of course, that under the ATU Constitution, local union officers also act as
delegates. This arrangement, whereby local union officers serve as *ex officio* delegates,
was upheld in *Theodus v. McLaughlin*, 852 F.2d 1380 (D.C. Cir. 1988). But any interest
served by a qualification for local union office is not per force served by a qualification
for the position of delegate. Each must serve their own interests. Perhaps what the

*Steelworkers*, 429 U.S. at 310.

III.   THE SECRETARY IS ENTITLED TO SUMMARY JUDGMENT ON HER

CLAIM THAT QUALIFICATIONS FOR OFFICE WERE NOT "UNIFORMLY

IMPOSED."

The Secretary argues that the defendant violated that portion of section 401(e)

which requires that qualifications for office be "uniformly imposed." As stated above,

the ATU Constitution requires that individuals who are members of non-LMRDA local

unions meet a two-year meeting-attendance candidacy requirement for delegate elections

and that LMRDA-covered local unions may (but need not) impose a similar rule requiring

that members satisfy a less stringent one-year meeting-attendance requirement. The

Secretary argues that, in creating distinct classes, the members of which are subject to

different meeting-attendance requirements, the defendant violated section 401(e)'s

uniform application requirement.

The defendant argues that the Secretary has misread section 401(e). According to

the defendant, section 401(e) requires *only* the uniform application of candidacy

qualifications within each local union: "Thus, in this case, the non-uniformity proviso

would require each local union to apply its meeting attendance rule in a uniform, non-

_____

defendant means by the third interest is that the meeting-attendance requirement ensures
that *delegates* are familiar with local union affairs. This interest assumes that only
knowledgeable and dedicated persons are qualified to act as delegates (and therefore
electors). Such an interest is patently antidemocratic, and "runs directly counter to the
basic premise of the statute." *Steelworkers,* 429 U.S. at 313.

discriminatory manner and would prohibit such practices as permitting incumbent officers or other select groups of members within a particular local union from obtaining special treatment with respect to the administration of the rule." Def. Br. at 28-29.

The defendant's reading of the statute cannot be correct. The statute requires more than uniformity at the local level. The requirement is that qualifications be "uniformly imposed." What this must mean, at the very least, is that the qualification must be uniform at the level of the source of its imposition. In other words, the International Union, itself, cannot impose varying candidacy qualifications on delegates that nominate and elect the officers of the International Union.[6] The construction offered by the defendant, in contrast, would permit discrimination. Suppose, for example, that a particularly popular union member from Local Union A threatened to run against the incumbent International President, a member of Local Union B. Under the defendant's construction of section 401(e), a candidacy qualification designed to render the challenger ineligible could be imposed on Local Union A. Such rank discrimination would not be prohibited by the defendant's reading of the statute, since the qualification would be "uniform" within Local Union A. Other than arguing for a construction of section 401(e) that the Court rejects, the defendant has not offered a rational basis for the differing requirements. The Court therefore concludes that the defendants have violated the

---

[6] The Court notes that whether section 401(e) requires absolute uniformity is not an issue in this case.

uniformity requirement of section 401(e).

IV.    THE DEFENDANT CONCEDES THAT SEVERAL OF THE DELEGATES
       THAT WERE SENT TO THE ATU CONVENTION WERE NOT "CHOSEN BY
       SECRET BALLOT."

Section 401(a) requires that, if an International Union chooses its officers at a
convention of delegates, those delegates must be "chosen by secret ballot." The Secretary
asserts that three locals sent delegates to the 1998 International Convention who were not
chosen by secret ballot. According to the Secretary, Local 1181 sent two delegates to the
convention who were appointed by the local's president; Local 1338 sent three delegates
to the convention who were selected by its executive board; and Local 757 sent two
delegates to the convention who had been appointed by its president. The defendant
appropriately concedes that the appointment of delegates violates section 401(a) of the
LMRDA. Further, although the defendant states that one of the seven delegates was, in
fact, elected, the defendant states that "because nothing in this case could conceivably
turn on the status of that one delegate," it is "willing to concede her non-elected status
solely for the purposes of this proceeding." Br. at 23 n. 10.

V.     THE VIOLATIONS OF THE LMRDA "MAY HAVE AFFECTED" THE
       ELECTION FOR EVERY OFFICER OF THE INTERNATIONAL UNION.

The Secretary is not entitled to an order for a supervised election unless the Court
can find "upon a preponderance of the evidence after a trial upon the merits" that the

violation of section 401 "may have affected the outcome" of the election.  29 U.S.C. §

482(c).  The Supreme Court has held that once a violation of section 401 has been proven,

the existence of that violation establishes a prima facie case that the defendant's violation

"may have affected the outcome" of the election.  *Hotel Employees*, 391 U.S. at 506-07.

The prima facie case may be rebutted by "evidence which supports a finding that the

violation did not affect the result."  *Id.* at 507.

The defendant concedes that the elections for six international offices may have

been affected by the violation.  Three races, those for Fourth IVP, Tenth IVP, and

Eighteenth IVP, were contested.  The parties have stipulated that in locals representing

more than half of the delegates, an invalid meeting-attendance rule was applied.  Joint

Stip. at 14, ¶ 24.  Consequently, the pool of delegates was sufficiently tainted that the

violation may have affected the outcome of any contested election.

In addition to the contested elections, the races for First IVP, Second IVP, and

Third IVP were uncontested, but intervenors Wallace, Maas, and Terrana sought

nomination for these offices, respectively.  The defendant concedes that, but for the

meeting-attendance requirements, different delegates might have been elected.  Those

delegates, in turn, might have nominated and elected union members Wallace, Maas, and

Terrana.

The defendant contests that the violations "may have affected" the outcome of the

election for the fifteen other officers, each of which was uncontested.  In order to survive

19

a motion for summary judgment, the defendant must show that a reasonable fact-finder could find, by a preponderance of the evidence, that the violation did not affect the result of the elections for international officers. *See Hotel Employees*, 391 U.S. at 507.

According to the defendant, there is a genuine issue of material fact with respect to whether the elections for international office that went uncontested would have remained uncontested in the absence of the violations of Title IV. Initially, the defendant points to the nominally low barriers to entry for union members interested in running for International office. All such potential candidates need do is obtain the nomination of a single delegate. According to the defendant, a fact-finder could infer from this that any potential candidate who wished to run in an uncontested race would have come forward to have their name placed on the ballot. Tandemly, the defendant points to the results of the Secretary's 1998 investigation into the election at issue. In 1998, the Labor Department officials interviewed members of 33 large ATU locals. The 33 locals were chosen because of their large size and their geographic diversity. Joint Stip. at 11, ¶ 17. The parties have stipulated that the 33 locals represented a representative cross-section of the union. *Id.* Seventy-five local union officers and members were interviewed in the course of the investigation, and virtually all of the interviewees were asked: (i) whether they were aware of or could identify anyone within the International Union who was interested in running for an International Union office but who chose not to mount any candidacy for any reason, including reasons related to the meeting-attendance rule; (ii)

whether they were aware of or could identify anyone who was considering nominating someone for International Union office, but who did not have the opportunity to do so by reason of the meeting-attendance rule; and (iii) whether they were aware of any opposition movement at the International Union level. Joint Stip. at 11-12, ¶¶ 19-21. In response to these questions, no one was identified as a potential candidate for International office except union members Wallace, Maas, and Terrana. The defendant argues from this that a reasonable fact-finder could infer that no other union member was interested in running for office in the International Union.

The Court cannot agree. The burden on the Secretary in this case, viz., that the violation "may have affected" the outcome of the uncontested races, is quite low. The provision was specifically added to Title IV because of the difficulty of proving the actuality that any violation affected the outcome of an election. *See Hotel Employees,* 391 U.S. at 506 (citing Statement of Senator Goldwater, 105 Cong. Rec. 19765).

There is a "meaningful relation" between the defendant's violation of the Act and the results of the uncontested elections. *Wirtz v. Local Unions 410, IUOE,* 366 F.2d 438, 443 (2nd. Cir. quoted) (quoted with approval in *Hotel Employees,* 391 U.S. at 507). Over 50% of the delegates at the convention were elected pursuant to an invalid meeting-attendance requirement. It is "impossible to know" what would have transpired at the convention if properly elected delegates had been present. *Hotel Employees,* 391 U.S. at 508. Even before the convention, any union member, never having previously considered

21

making a run for office, may have decided that conditions were favorable and sought

nomination.  Just as likely, a delegate at the convention, having gained experience in

International Union issues, may have decided to run for office.  It is clear that union

members often do not decide to run for office until shortly before elections.

*Steelworkers*, 429 U.S. at 311.  There are a number of other reasonably possible scenarios

which could have led to union members seeking office.  *See Hotel Employees*, 391 U.S.

at 508 (requiring "tangible evidence against the reasonable possibility that the wholesale

exclusion of members did not affect the outcome.").

    In contrast, the Court finds that the proof offered by the defendant would involve

nothing but guesswork.  All the defendant's evidence necessarily proves is that no other

union member who was contacted – only 75 out of approximately 103,894 members –

was interested in running for office with the pool of delegates as it was.  It does not,

however, adequately rebut the reasonable possibility that someone might have been (or

have become) interested in running for office if the pool of delegates was different.  Any

evidence about what would have happened at an untainted convention is pure conjecture,

since the defendant's violations precluded such an event from transpiring.  *Id; see Keefe*

*Co. v. Americable Int'l*, 169 F.3d 34, 38 (D.C. Cir. 1999) ("[I]f undisputed facts point

unerringly to a single, inevitable conclusion, summary judgment would be warranted.").

VI.    THE INTERVENORS ARE NOT ENTITLED TO AN ORDER REQUIRING
       THE ATU TO STRIKE THE OFFENDING PROVISION FROM ITS
       CONSTITUTION.

The Intervenors urge the Court to order, as part of a remedy for violations of the

LMRDA, the ATU to strike the offending meeting-attendance requirements from its

constitution.  Section 402 of the LMRDA provides an exclusive post-election remedy for

violations of Title IV.  In the event a violation is found that may have affected the

outcome of an election, "the court shall declare the election . . . to be void and direct the

conduct of a new election under the supervision of the Secretary . . . ."  29 U.S.C. §

482(c).

The intervenors' request for an order striking the offending provision from its

constitution is an attempt to prohibit the defendant from enforcing the provision in future

elections.  Section 402 only permits the Court to void an unlawful election and direct the

conduct of a new election.  By its terms, section 402(c) permits only post-election relief.

*Cf. Calhoon v. Harvey*, 379 U.S. 134, 140 (1964) ("Section 402 of Title IV . . . sets up an

exclusive method for protecting Title IV rights, by permitting an individual member to

file a complaint with the Secretary of Labor challenging the validity of any election

because of violations of Title IV. . . . Congress . . . decided not to permit individuals to

block or delay union elections by filing federal-court suits for violations of Title IV.").

The Court will therefore not order the defendant to strike the offending meeting-

attendance requirements from its constitution.

In accordance with the foregoing, it is

**ORDERED** that the plaintiff's and intervenors' motions for summary judgment are granted.

This case is closed.

IT IS SO ORDERED.

Dated: March 28, 2001

JOYCE HENS GREEN
United States District Judge